**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Latasha Hampton, | No. CV-24-00760-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| City of Tempe, et al., | |
| Defendant. | |

Plaintiff Latasha Hampton, a Tempe police officer, brings claims for Title VII disparate treatment, Title VII and Arizona Civil Rights Act ("ACRA") hostile work environment, and Title VII and ACRA retaliation against the City of Tempe. These claims stem from various workplace incidents that culminated in her temporary reassignment and office relocation.

Hampton's disparate treatment and hostile work environment claims were dismissed with leave to amend in a prior order, and the retaliation claim was allowed to proceed. The City now moves to dismiss Hampton's amended disparate treatment and hostile work environment claims. Because Hampton has fixed the deficiencies in her disparate treatment claim but not her hostile work environment claims, the former may proceed and the latter are dismissed with prejudice.

**I.    Background**

A detailed factual background was provided in the court's order partially granting defendants' motion to dismiss Hampton's first amended complaint. (*See* Doc. 36 at 1–6.)

She realleges those facts and adds the allegations described below. Like her earlier complaint, Hampton's allegations generally concern the way the Tempe Police Department ("TPD") treated her during an investigation into an incident in which she allegedly used excessive force (the "Carl's Junior Investigation"). She believes the City's treatment of her was discriminatory and constituted part of a hostile work environment.

After TPD dismissed the Carl's Junior Investigation for failure to timely complete it in accordance with TPD's policies, an anonymous letter was sent to the Arizona Peace Officer Standards and Training Board ("AZ POST") "complaining of internal injustices occurring within TPD regarding employee discipline and special treatment of certain officers." (Doc. 40 at 16.) Hampton now alleges that letter was "authored by someone within TPD." (Doc. 40 at 16, 17.) She claims the letter "explicitly asserts that TPD Commanders base disciplinary decisions on race." (Doc. 40 at 17.) But the letter claims Hampton was treated favorably because she is Black and as a result she was not adequately disciplined for the Carl's Junior incident, not that she was discriminated against and treated unfairly because of her race. (*See* Doc. 42-1 at 2–3.) AZ POST then began its own investigation into the three officers involved in the Carl's Junior incident. (Doc. 40 at 22, 25–26.) AZ POST decided to move forward with disciplinary actions against only Hampton. (Doc. 40 at 26.)

Hampton now alleges she hired a taser expert to evaluate the evidence examined during the AZ POST investigation. She claims that expert "opined that [her] taser was malfunctioning at the time[ ]" of the incident. (Doc. 40 at 27.) She also claims the AZ POST "elected to not look at or consider all the evidence[ ]" in her case which led to her being the only officer disciplined as a result of the Carl's Junior Investigation. (Doc. 40 at 35.) Hampton alleges the City "had no issue" with the AZ POST's "minimal inquiry into the evidence" and after the AZ POST's determination, "retaliated against [her] and treated her differently than other white officers similarly situated to her[ ]"—presumably by reassigning her to a civilian property position and relocating her to another building. (Doc. 40 at 35.) The court's prior order identified a flaw in Hampton's complaint as failing to

identify similarly-situated comparators who, like Hampton, were "investigated and disciplined but not reassigned." (Doc. 36 at 8.)

Hampton attempts to remedy that flaw by comparing her treatment after the AZ POST's investigation to that of Ronald Kerzaya, a white man. (Doc. 40 at 20.) Kerzaya had three use-of-force incidents: (1) he tased a Black man who was holding a child, but was not disciplined (Doc. 40 at 20–21); (2) he was investigated for a use-of-force incident (which Hampton does not describe), resulting in finding a violation and discipline of a two-week suspension and a "restrict[ion] to office duties within the patrol office for a year" (Doc. 40 at 20); and (3) he held a hotel employee at gunpoint and was suspended 80 hours for the incident (Doc. 40 at 21). Hampton claims Kerzaya is an appropriate comparator because he was not reassigned or relocated for any of these incidents like she was as a result of the AZ POST's investigation.

Hampton also adds allegations that TPD's internal affairs investigations exhibited a "pattern of bias[ ]" that "disproportionately affected minority African-American[s] and female officers" like her, "who frequently seemed to face more excessive punishment compared to their white male counterparts." (Doc. 40 at 20.) Hampton also now alleges TPD engaged in a "pattern and practice of discriminatory misconduct[ ]" including the advancement of non-Black employees with lower test scores than Black employees, implicit bias against Black employees, the denial of training opportunities to Black employees, and the isolation of Black employees from meetings that would have helped them advance their careers. (Doc. 40 at 27–28.) She also claims Black officers were "immediately rushed to discipline[ ]" when they were accused of using excessive force while non-Black officers were not disciplined. (Doc. 40 at 28.)

Finally, Hampton now alleges the City retaliated against her for filing this lawsuit by placing her on administrative leave and stripping her of her badge, taser, firearm, laptop, and cellphone. (Doc. 40 at 27.) She alleges white officers who were placed on administrative leave around the same time retained all their equipment. (Doc. 40 at 27.)

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64.

## III. Analysis

### A. Title VII Disparate Treatment Claim

Statutory discrimination claims are often analyzed using a multi-step framework that requires a plaintiff to first make a prima facie showing of certain facts before the burden shifts to the defendant to make different showings. But the requirement of establishing a prima facie case is an "evidentiary standard" and not a "pleading requirement[]." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Thus, a complaint cannot be dismissed merely because it does not contain facts establishing all the requirements of a prima facie case. *See Austin v. Univ. of Oregon*, 925 F.3d 1133, 1137 (9th Cir. 2019). That said, a plaintiff's complaint must still include "sufficient, nonconclusory allegations plausibly linking the [adverse] action to discrimination" or retaliation. *Id.* at 1138 (applying this standard in the Title IX context). And it is still helpful to consider the elements of a prima facie case when assessing the plausibility of a complaint. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (holding a plaintiff is not required to "establish a prima facie case in her complaint" but "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim"). Hampton now plausibly alleges a disparate treatment claim.

Title VII forbids discrimination by employers "because of" an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie disparate treatment claim under Title VII, a plaintiff must offer proof that: (1) she belongs to a class of persons protected by Title VII; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated her differently than a similarly-situated employee who does not belong to her same protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Hampton belongs to a protected class, so she meets the first prong of a prima facie disparate treatment claim. At this stage, the City does not challenge that Hampton can meet the second prong, so the court assumes she has. As stated in the court's previous order and consistent with the amended complaint, Hampton suffered an adverse employment action when she was reassigned to a civilian property position, satisfying the third prong. (*See* Doc. 36 at 7–8.) The City contends her disparate treatment claim fails because she has failed to allege comparators, the fourth element.

The court's prior order dismissed Hampton's disparate treatment claim because she had not identified a similarly-situated individual who was treated differently than her. (Doc. 36 at 8–9 ("Hampton's claim hinges on her reassignment after the AZ POST decided to pursue discipline against her, [so] she need[s] to point to comparators who were investigated and disciplined but not reassigned.").) Hampton's amended complaint continues to point to the two white officers involved in the Carl's Junior Investigation whom AZ POST did not discipline. (Doc. 40 at 31.) The court has already held these two officers are not similarly situated because the lack of AZ POST discipline means they did not engage in "problematic conduct of comparable seriousness" (Doc. 36 at 5, 8–9), and nothing in the amended complaint changes that analysis. But Hampton's amended complaint now plausibly identifies a comparator who is alleged to be similarly situated, Ronald Kerzaya. (*See* Doc. 40 at 20–21.)

Hampton alleges Kerzaya was involved in three excessive force incidents. (Doc. 40 at 20–21.) For the first of these, in which Kerzaya tased a Black man that was holding his

- 5 -

child, Hampton does not allege a disciplinary violation was found. (Doc. 40 at 7.) But for the other two excessive force incidents, Hampton alleges Kerzaya received an 80-hour suspension (implying a violation was found) and as to the undescribed incident, explicitly alleges a violation was found which led to Kerzaya's suspension for two weeks and assignment to office work in the patrol office for a year. (Doc. 40 at 20–21.) Hampton alleges these sustained violations did not lead to "remov[al] from the department or reassign[ment] . . . to a public property position in an entirely separate building away from his peers" as was the case with her. (Doc. 40 at 31; *see also* Doc. 40 at 19–20.) Although the City argues Kerzaya's disciplinary actions were more severe than those taken against Hampton, it has provided no basis for the court to make that finding at this stage. (Doc. 42 at 7.) Hampton's amended complaint therefore plausibly pleads that despite similar underlying use-of-force events, Hampton was treated differently than a white coworker and thus plausibly pleads a comparator to round out her Title VII disparate treatment claim.

The City argues Hampton's reassignment cannot be a basis for her disparate treatment claim because TPD Chief Kenneth McCoy, who reassigned her, is also Black. (*See* Docs. 42 at 5–6, 46 at 2–4.) None of the City's citations actually contain that proposition and it is not the law. For example, *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 n.5 (4th Cir. 2002), describes color discrimination as discrimination based on "the particular hue of the plaintiff's skin" but does not hold that someone of a particular race cannot discriminate against someone else of that same race. Nor do any of the other cases the City cites stand for such a proposition. (*See* Doc. 42 at 6 (citing cases).)

In fact, Title VII does not foreclose racial discrimination claims based on same-race discrimination. *See Sharp v. Donahoe*, No. 11CV1433-LAB NLS, 2013 WL 1285545, at *4 (S.D. Cal. Mar. 26, 2013) ("That [the supervisor] is of the same race as [the plaintiff] does not preclude a Title VII racial discrimination claim against the employer[.]") (citation omitted); *United States v. Crosby*, 59 F.3d 1133, 1135, n.4 (11th Cir. 1995) ("[A] Title VII violation may occur even where a supervisor or decision-maker is of the same race as the alleged victim.") (citation omitted). The City's argument fails and its motion to dismiss

Hampton's Title VII disparate treatment claim is denied.

## B. Title VII and ACRA Hostile Work Environment Claims[1]

At the motion to dismiss stage, Hampton "need not support [her] allegations with evidence, but [her] complaint must establish sufficient facts to state the elements of a hostile work environment claim." *Johnson v. Riverside Healthcare Sys.*, LP, 534 F.3d 1116, 1122 (9th Cir. 2008). Hampton "does not have to prove a prima facie hostile work environment case at the pleading stage." *Arizona ex rel. Goddard v. Geo Grp., Inc.*, No. CV 10-1995-PHX-SRB, 2011 WL 13137316, at *8 (D. Ariz. Apr. 11, 2011). But for this claim too, it is helpful to consider the elements of a prima facie case when assessing the plausibility of a complaint. *See Khalik*, 671 F.3d at 1192.

The elements of a prima facie hostile work environment claim under Title VII are that the plaintiff "(1) was subjected to verbal or physical conduct because of her race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) (simplified). "Courts are to determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (simplified).

Hampton alleges the same events described in her first amended complaint gave rise to a hostile work environment. (*Compare* Doc. 36 at 10 *with* Doc. 40 at 18.) The court already determined several of these events were too old and unrelated to constitute a hostile work environment and none were tied to race. (*See* Doc. 36 2–3, 7–8, 10.) She now adds new allegations including that the AZ POST's investigation into the Carl's Junior Incident was flawed (specifically because her taser logs had been deleted and a taser expert she hired determined her taser was malfunctioning at the time of the incident). (Doc. 45 at 11.)

---

[1] The ACRA and Title VII are "generally identical," so the Title VII analysis applies to the ACRA. *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004).

- 7 -

She also alleges the investigation itself created a hostile work environment and removal "of the only two high-ranking individuals who defended [her] rights[ ]" contributed to that environment. (*See* Docs. 40 at 11, 27, 35, 46 at 11–12.) For various reasons, these allegations—individually and viewed together—still fail to plausibly allege a hostile work environment claim.

Hampton's new allegations do appear to have occurred after February 2, 2023, and therefore fall within the statutory period in which Hampton may allege unlawful employment practices. (*See* Doc. 36 at 7–8.) But as was the case with Hampton's previous complaint, none of her hostile work environment allegations—new or old—are sufficiently related to invoke the continuing violations doctrine which would obviate the time bar for her earliest allegations. *See Lelaind v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1092 (N.D. Cal. 2008) (noting the doctrine allows a court to "consider the entire scope of unlawful behavior . . . *provided that* all acts which constitute the claim are *part of the same* unlawful employment practice") (emphases added). The City did not conduct the AZ POST investigation—so this act was not even taken by her employer—and the removal of two high-ranking individuals is not similar enough to constitute part of the same employment practice. *See Porter v. California Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) (whether the continuing violations doctrine applies depends in part on "whether the earlier and later events amounted to 'the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers'") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)); *cf. Gilliam v. S.C. Dep't Of Juv. Just.*, 474 F.3d 134, 141 (4th Cir. 2007) (finding events were sufficiently similar for the continuing violations doctrine to apply when the same supervisor reprimanded the plaintiff three times for similar acts). Nor has she plausibly alleged these new allegations (together with her previous ones) were "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002).

Hampton's argument that the AZ POST's investigation itself was an act contributing

to a hostile work environment also fails. The AZ POST is not a defendant, and Hampton does not explain how the City created a hostile work environment via the AZ POST's independent investigation. *See Malloy v. Regents of Univ. of California*, No. 19-CV-07995-TSH, 2020 WL 789821, at *6 (N.D. Cal. Feb. 18, 2020) ("Title VII prohibits discrimination by employers but does not generally impose liability for the conduct of non-employers."). Hampton has not alleged any connection between the City's alleged deletion of her taser logs (Doc. 40 at 17) and the AZ POST's investigation that would suggest the former had any bearing on the latter. The closest Hampton comes to alleging such a connection is when she claims the City "had no issue with the [AZ POST's] minimal inquiry into the evidence" and that it disciplined her anyway. (Doc. 40 at 26.) But she does not allege the City was aware of how the AZ POST evaluated the evidence in her case so as to potentially make it liable for the conduct of a non-employer. *See id.*

Additionally, the court previously dismissed Hampton's hostile work environment claims because she did not plausibly plead race was a motivating factor behind the events she alleged. (*See* Doc. 36 at 10.) That is still true of the amended complaint and independently dooms her hostile work environment claim. *See Sharp v. S&S Activewear, L.L.C.*, 69 F.4th 974, 978 (9th Cir. 2023) ("[A] plaintiff bringing a hostile work environment claim must show discrimination by an employer on account of membership in a protected group under 42 U.S.C. § 2000e-2(a)(1)."); *Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist.*, 750 F. App'x 41, 47 (2d Cir. 2018) (quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20, 23 (2d Cir. 2014)) (to establish a Title VII hostile work environment claim the "mistreatment must have occurred 'because of [the] employee's protected characteristic, such as race or national origin,' although the protected characteristic need not be 'the *only* motivating factor'"). Indeed, a plaintiff must show she was "subjected to verbal or physical conduct *because of her race*[ ]" to establish a prima facie Title VII hostile work environment claim. *Manatt*, 339 F.3d at 798 (simplified) (emphasis added). Hampton has not pleaded that necessary element here and even if she had, she provides no facts to support that belief. *See Henry v. Regents of the*

*Univ. of California*, 37 F. Supp. 3d 1067, 1084 (N.D. Cal. 2014), *aff'd*, 644 F. App'x 787 (9th Cir. 2016) (dismissing Title VII hostile work environment claim at summary judgment in part because "there are no facts, other than plaintiff's speculation, that any of these incidents were motivated by racial animus").

Hampton also argues hostile work environment claims may be established "through retaliatory conduct" such as the City retaliating against her for filing this lawsuit (Doc. 40 at 27)—which allegedly led to her being placed on administrative leave and stripped of her badge, taser, firearm, laptop, and cellphone. (Doc. 40 at 27.) She cites *Ray v. Henderson*, 217 F.3d 1234, 1245 (2000), for the contention that a hostile work environment claim may be based on retaliatory conduct. To the extent *Ray* can be read to hold a hostile work environment claim may be based on retaliatory conduct,[2] that conduct must still be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (citation and quotations omitted). Hampton has not plausibly alleged the conduct at issue was "sufficiently severe or pervasive" to alter the conditions of her employment, so her hostile work environment claim fails even if it is based on the alleged retaliation she faced for filing this lawsuit.

Each of Hampton's hostile work environment allegations—individually and viewed together—fail to plausibly state a claim for multiple reasons. This was Hampton's third amended complaint, and she will not be granted another opportunity to amend her complaint. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (quotations omitted); *see also Robinson v. GE Money Bank*, No. 09-CV-00227-AWT, 2014 WL 12693835, at *2 (D. Ariz. Apr. 15, 2014) ("Plaintiffs have already had two opportunities to state a claim, and they need not be granted a third opportunity."). Hampton's Title VII and ACRA hostile work environment claims are therefore dismissed with prejudice.

---

[2] *But see Stratton v. Bentley Univ.*, 113 F.4th 25, 43–44 (1st Cir. 2024) (retaliatory hostile work environment claims are properly considered under Title VII's retaliation provision); *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860–61 (11th Cir. 2020) (same).

**IV.    Conclusion**

Hampton's Title VII disparate treatment claim against the City may proceed alongside her retaliation claim. Her hostile work environment claims under Title VII and the ACRA are dismissed with prejudice.

Accordingly,

**IT IS ORDERED** defendant's motion to dismiss (Doc. 42) is **GRANTED IN PART**. Hampton's Title VII disparate treatment claim may proceed, but her Title VII and ACRA hostile work environment claims are **DISMISSED WITHOUT LEAVE TO AMEND**.

Dated this 30th day of July, 2025.

Honorable Krissa M. Lanham
United States District Judge